UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LONNIE BLACKWELL, | : | CIVIL CASE NO. |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| CITY OF BRIDGEPORT, JOSEPH P. GANIM, | : | |
| MAYOR OF THE CITY OF BRIDGEPORT, IN HIS | : | |
| OFFICIAL CAPACITY, AND REBECCA GARCIA, | : | |
| ACTING POLICE CHIEF OF THE CITY OF | : | |
| BRIDGEPORT, IN HER OFFICIAL CAPACITY, | : | |
| Defendants. | : | JUNE 7, 2021 |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This action is brought against the defendants, pursuant to Title 42 U.S.C. § 1981, made actionable against the defendants pursuant to Title 42 U.S.C. § 1983, in which the plaintiff seeks declaratory, injunctive and equitable relief, and compensatory damages, and costs and attorney fees to remedy the unlawful retaliation to which the defendant has subjected the plaintiff because of his opposition to the unlawful race discrimination to which the plaintiff has been subjected by Acting Police Chief Rebecca Garcia ("Garcia").

### II. JURISDICTION

2. This action also arises under the provisions of Title 42 U.S.C. §1981, made actionable against the defendant, city of Bridgeport ("Bridgeport"), the defendant, Joseph P. Ganim ("Ganim") and the defendant, Garcia, pursuant to the provisions of Title 42 U.S.C. § 1983.

3. Jurisdiction is invoked pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343(a)(3), Title 28 U.S.C. § 1343(a)(4), Title 28 U.S.C. § 1367, Title 28 U.S.C. § 2201(a), and Title 42 U.S.C. § 1981.

4. Jurisdiction is invoked pursuant to Title 28 U.S.C. §1343(a)(3), and Title 28 U.S.C. §1343(a)(4).

5. Declaratory, injunctive, compensatory, and equitable relief is sought pursuant to Title 28 U.S.C. §2201 and §2202. Compensatory and punitive damages are sought pursuant to Title 42 U.S.C. §1981 and Title 42 U.S.C. §1988.

6. Costs and attorney fees may be awarded pursuant to Title 42 U.S.C. §1988.

### III. VENUE

7. This action properly lies in the District of Connecticut pursuant to Title 29 U.S.C. §1391(b) because the claims arose in this judicial district.

### IV. PARTIES

8. The plaintiff is an African American citizen of the United States, whose color is black.

9. The plaintiff resides in Milford, Connecticut.

10. The defendant, Bridgeport, is a political subdivision of the State of Connecticut; it is a municipal corporation, organized and existing under the laws of the State of Connecticut.

11. The defendant, Ganim, is the Mayor of the defendant, Bridgeport, and, as Mayor, pursuant to the Bridgeport City Charter, exercises, through the Chief of Police, ultimate operational control of the Police Department.

12. The defendant, Garcia, is the Acting Chief of Police of the defendant, Bridgeport, and, as Acting Police Chief, subject to the operational control of the mayor, is responsible for the administration, supervision and discipline of the Bridgeport Police Department including suspension, loss of pay and discharge of members of the department and the assignment of all members of the Bridgeport Police Department to their respective posts, shifts, details and duties.

13. The defendant, Bridgeport, is a person within the meaning of Title 42 U.S.C. § 1983.

14. The defendant, Bridgeport, at all times relevant to this action, acted under color of state law.

15. The defendant, Ganim, at all times relevant to this action, acted under color of state law, and within the scope of his authority as the Mayor of Bridgeport.

16. The defendant, Garcia, at all times relevant to this action, acted under color of state law, and within the scope of her authority as Acting Police Chief of the Bridgeport Police Department.

V. **STATEMENT OF FACTS**

17. On November 27, 2000, the defendant hired the plaintiff as a police officer in the Bridgeport Police Department.

18. Throughout his employment with the defendant, the plaintiff has had an exemplary and unblemished work record.

19. Based on his job performance, the plaintiff has received various decorations and commendations bestowed on him by the defendant, including the 2020 Bridgeport

"Living Legend" award presented to him by the Chief Administrative Officer for the city of Bridgeport.

20. In 2006, the plaintiff was promoted to the position of Sergeant in the Bridgeport Police Department based on his work history and his performance on a competitive eligibility examination.

21. On the promotion eligibility list for the position of Sergeant, the plaintiff was one of the highest ranked police officers.

22. In 2008, the plaintiff was promoted to the position of Lieutenant in the Bridgeport Police Department based on his work history and his performance on a competitive eligibility examination.

23. On the promotion eligibility list for the position of Lieutenant, the plaintiff was ranked first.

24. The plaintiff currently holds the command rank of Captain, with seniority dating from December 14, 2014.

25. In 2010, the plaintiff was elected President of Bridgeport Guardians, Inc., and currently serves as its Vice President.

26. The Bridgeport Guardians, Inc. is an organization comprised of minority police officers; its overriding purpose is to combat employment discrimination in the Bridgeport Police Department.

27. Because of his leadership role in the Bridgeport Guardians, Inc. in combatting discriminatory employment practices in the Bridgeport Police Department, the plaintiff had been subjected to harassment, ridicule, and unfavorable employment practices.

28. On or about July 20, 2020, the plaintiff filed an internal complaint with the Bridgeport Police Department alleging that then Assistant Chief Rebecca Garcia, now Acting Police Chief, had intentionally subjected him to racial discrimination in the terms and conditions of his employment, to harassment, ridicule, and other specified unfavorable employment practices. *Exhibit 1.*

29. On or about August 24, 2020, the plaintiff was informed by legal counsel for the defendant, Bridgeport, that his "complaint dated July 20, 2020, has been referred for investigation to an independent investigator."

30. Since the plaintiff filed his internal complaint in which he expressed his opposition to the race discrimination to which he has been subjected by the defendant, Garcia, she has subjected him to a continuing course of retaliation.

31. The plaintiff's complaints to the defendant, Bridgeport, and its authorized agents, including Ganim, Garcia, and the city attorney for Bridgeport, concerning the harassing and unfavorable treatment to which he has been subjected have gone unheeded; the defendant taking no action, what-so-ever, to protect the plaintiff, and to prevent the harassment and unfavorable treatment from continuing in the future.

32. Garcia has marginalized the plaintiff's duties and responsibilities as a Captain on the Bridgeport Police Department.

33. Garcia has treated the plaintiff, in front of his superiors, peers, and subordinates in a demeaning and disrespectful manner, at times displaying her irrational disdain for the plaintiff by rolling her eyes in contempt whenever the plaintiff offered police operational and managerial suggestions, dismissing out of hand any input

he would offer, and on the rare occasion that she would address him, she would speak to him in a noticeable condescending tone.

34. Since she became Acting Chief of Police, Garcia has excluded the plaintiff, without legitimate reason, from Compstat (command staff) meetings which are vital to Bridgeport's crime reduction efforts.

35. Similarly, on or about January 12, 2021, the plaintiff requested that Garcia allow him to participate in an executive briefing on the Presidential Inauguration Day planning, conducted by Scott Appleby, the defendant's Emergency Operations Director, which request Garcia ignored and to which she has never responded.

36. To date, Garcia has not telephoned, texted and/or emailed the plaintiff regarding his legitimate inquiry about attending the inauguration preparation meeting as one of the five police commanders of the Bridgeport Police Department.

37. Garcia simply ostracized the plaintiff from his command level responsibilities in the Bridgeport Police Department, making no effort to forward the plaintiff the details of the preparation meeting.

38. On January 13, 2021, Garcia ordered the plaintiff from his position as Patrol Commander in Uniform Services Patrol to Commander of Community Services.

39. However, on assigning the plaintiff to command Community Services, Garcia stripped from the plaintiff's command of approximately seventy-five (75%) of what had been the scope of Community Services.

40. The plaintiff was stripped of the subordinate officer, Lt. Paul Grech, as well as approximately eighty Bridgeport Board of Education security guards from his command, leaving him to supervise only fourteen officers and two sergeants.

41. On reassigning the plaintiff to Community Services, Garcia removed, without explanation and justification, approximately eighty school security guards and the Board of Education security operation from his command and oversight.

42. Garcia further diminished the plaintiff's duties and responsibilities by having the plaintiff's subordinate, Lieutenant Paul Grech continue to supervise the school resource officer division ("SRO"), outside the plaintiff's chain of command.

43. Garcia has continuously denied the plaintiff's requests to attend community events, City Council and community meetings.

44. As Patrol Commander, the plaintiff supervised and oversaw approximately one hundred and eighty police officers and civilians including approximately twenty-five sergeants and lieutenants.

45. The transfer of the plaintiff by Garcia to the administrative services section was demeaning, insulting and career damaging for the plaintiff.

46. As Captain of Community Services, the plaintiff is responsible for approximately seventeen officers.

47. As a pretext to cover up her retaliatory conduct, Garcia placed the plaintiff in charge of the garage, record room, property room, permits and alarm administrator, areas that are administrative and self-sufficient and now refers to plaintiff's assignment as "Captain of Administrative Services"

48. In a recent court filing, the defendant, Bridgeport, has admitted that "[c]ommand within patrol is undeniably one of the Department's most important and respected positions."

49. The reasons advanced by the defendant for transferring the plaintiff are pretexts to cover up its retaliatory treatment of the plaintiff.

50. There was no logical reason for the transfer of the plaintiff on January 18, 2021; it was not made after an assessment of the department needs, it was not made at a normal calendar rotational break, such as the beginning of the year, or month, or at the end or beginning of a quarterly interval in the year.

51. On being appointed Acting Police Chief, one of the first actions taken by Garcia was to expand an investigation involving the alleged use of excessive force by a police officer to include the plaintiff for having reported the incident to A.J. Perez, the Bridgeport Police Chief at the time of the incident, August 16, 2019.

52. The plaintiff had no involvement in the incident in question, and his reporting of the incident to the Police Chief was proper and in accordance with Bridgeport Police Department rules and regulations.

53. On August 17, 2019, when the plaintiff learned of the incident by being sent a video by a member of the Bridgeport City Council, which purported to record the incident, the plaintiff was off duty, attending a family gathering.

54. In keeping with his duties as a commanding officer in the Bridgeport Police Department, and although off duty, the plaintiff alerted the Police Chief Perez to the incident.

55. Chief Perez discussed the matter with the plaintiff and together they discussed on what steps should be taken by the Police Chief to address the issue.

56. With the plaintiff offering advice to Police Chief Perez, Chief Perez contacted Sergeant Llanos of the Bridgeport Police Department's Office of Internal Affairs to order an immediate investigation of the incident.

57. The Police Chief further indicated to the plaintiff he would be referring the case to the Detective Bureau to conduct a criminal investigation of the matter.

58. Chief Perez thanked the plaintiff for his quick action in alerting him to the incident and offering suggestions on what the police department should do in response.

59. Subsequent follow-up to this investigation occurred between the patrol commanders, the investigative services commander, Deputy Chief James Baraja and Police Chief Armando J. Perez.

60. Chief Perez ordered a criminal investigation for the actions of the officers involved with an expectation that the findings would be forwarded to the state's attorney's office for criminal charges.

61. On or about May 12, 2021, the defendant, Garcia, acting as the authorized agent of Bridgeport and Ganim, falsely charged the plaintiff with violations of rules and regulations of the Bridgeport Police Department for the bogus reason that "[t]he responsibility of a Captain is not to see wrongdoing and toss it along to the Chief. His function is to act accordingly and thoroughly and perform the necessary functions of a leader and commander of the Bridgeport Police Department."

62. The alleged incident of excessive force occurred on August 16, 2019, while the plaintiff was off-duty, with the video receiving extensive public viewing on August 17, 2019.

63. The plaintiff and the Bridgeport Police Department Command staff were not notified of the incident by lieutenant who was first ranking officer to respond to the incident.

64. The plaintiff only learned of the incident because of his receipt of a copy of the video from the city council person, not through the Bridgeport Police Department chain of command.

65. The plaintiff's response to the incident of August16, 2019, in bringing the matter to the immediate attention of the Police Chief, was commendable, and constituted protected activity under Connecticut General Statutes § 31-51m.

66. Since filing his internal unlawful discrimination complaint against Garcia, the defendants have subjected the plaintiff to a continuous course of retaliatory acts.

67. The Office of Internal Affairs investigation into the plaintiff's conduct on August 17, 2019, was allegedly concluded on or about December 18, 2020.

68. The defendants did not file departmental charges against the plaintiff until on or about May 12, 2021.

69. The defendants filed departmental charges against the plaintiff on May 12, 2021, only after the plaintiff had filed an unlawful retaliation complaint against Bridgeport with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC") on or about February 8, 2021, which was served on Bridgeport on or about February 23, 2021.

70. Since the plaintiff filed his first unlawful discrimination complaint against Garcia, the defendants have subjected him to a continuous course of unlawful retaliation.

71. But for the plaintiff charging Garcia with unlawful discrimination and retaliation, he would not have been subjected to the defendants' retaliation, including his transfer from his position as Patrol Commander, his being ostracized from the command staff of the Bridgeport Police Department, his role as Community Services Commander being marginalized, and his being charged with failing to perform his duties as a Captain on August 17, 2019.

72. As a result of the retaliatory behavior to which the plaintiff has been subjected by the defendants, the plaintiff has loss significant amount of overtime opportunities.

73. As a result of the retaliatory behavior to which the plaintiff has been subjected by the defendants, the plaintiff has suffered emotional distress.

### IV. **FIRST CAUSE OF ACTION (Unlawful Retaliation In Violation Of Title 42 U.S.C. § 1981)**

74-146. The plaintiff incorporates as if re-alleged paragraphs 1 through 73.

147. The plaintiff has been subjected to retaliation by the defendants because he objected to the discriminatory treatment to which the plaintiff was subjected by Garcia by filing an internal department charge of unlawful discrimination against Garcia.

148. The plaintiff has been subjected to retaliation by the defendants because he filed complaints with the CHRO and EEOC on February 8, 2021.

149. Because the plaintiff filed complaints with the CHRO and EEOC on February 8, 2021, and filed an internal department discrimination complaint against Garcia, the defendant subjected the plaintiff to unlawful retaliation.

150. As a result of the defendants' retaliatory behavior, the plaintiff has loss significant amount of compensation, and benefits.

151. Because of the retaliatory behavior of the defendants, the plaintiff has suffered emotional distress.

152. The defendants intentionally, and with a discriminatory animus, subjected the plaintiff to unlawful retaliation on account of the plaintiff's opposition to the race discrimination and retaliation to which he has been subjected by the defendants.

153. Notwithstanding the retaliatory behavior to which the plaintiff has been subjected, the plaintiff continues to perform his job duties in a competent manner.

154. The plaintiff's complaints about the discriminatory treatment and retaliation to which he has been subjected constitutes protected activity under the provisions of Title 42 U.S.C. § 1981.

155. The defendants have engaged in unlawful retaliation against the plaintiff with malice and/or reckless indifference to the plaintiff's rights under Title 42 U.S.C. § 1981.

156. The retaliatory actions of the defendants directed at the plaintiff would deter a reasonable employee from making, filing, or supporting a claim of workplace discrimination.

157. The plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged and the plaintiff is now suffering and will continue to suffer irreparable injury from his treatment by the defendant unless the defendant is enjoined by this Court.

158. The plaintiff is now and will continue to suffer emotional distress as a direct result of the defendants' unlawful retaliation.

159. The plaintiff has suffered economic injury as a direct result of the defendants' unlawful retaliation.

160. The defendants discriminated against the plaintiff on the basis of the plaintiff's opposition to the defendant's unlawful racial discrimination, and retaliation when he complained about such acts to the CHRO, the EEOC, and filed an internal Bridgeport Police Department complaint of unlawful discrimination.

161. Because the plaintiff's opposition to the defendant's race discrimination was a determinative factor in the retaliatory manner in which the plaintiff was subjected by the defendants, the defendants have violated Title 42 U.S.C. § 1981.

162. The defendants engaged in retaliation against the plaintiff with malice or reckless indifference to the plaintiff's rights under Title 42 U.S.C. § 1981.

163. Bridgeport and Ganim violated the provisions of Title 42 U.S.C. § 1981, when, through their inaction, they allowed Garcia to subject the plaintiff to unlawful retaliation.

164. In retaliating against the plaintiff, Garcia acted as the authorized agent of Ganim.

165. Garcia, subject to the operational control of the mayor, is responsible for the administration, supervision and discipline of the Bridgeport Police Department including suspension, loss of pay and discharge of members of the department and the assignment of all members of the Bridgeport Police Department to their respective posts, shifts, details and duties.

166. Ganim, as Mayor, exercises, through the Chief of Police, ultimate operational control of the Police Department.

167. In retaliating against the plaintiff, Garcia was the decisionmaker, subject only to the operational control of Ganim.

168. Ganim and Garcia, in retaliating against the plaintiff, acted as the duly authorized agents of Bridgeport.

## V.   PRAYER FOR RELIEF

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS COURT:

i. Declare the conduct engaged by the defendant to be in violation of the plaintiff's rights under Title 42 U.S.C. § 1981 and Title 42 U.S.C. § 1983;

ii. Award plaintiff the equitable relief of lost pay and benefits, together with prejudgment interest for the entire period;

iii. Award plaintiff compensatory damages, including monetary damages for the emotional distress suffered by the plaintiff;

iv. Award plaintiff costs and attorney fees; and

v. Grant such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY JURY.**

THE PLAINTIFF – LONNIE BLACKWELL

By: /s/ Thomas W. Bucci
Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.
1000 Bridgeport Avenue
Ste 5th Floor Suite 501
Shelton, CT 06484
203-366-3939
Fax: 475-269-2907
Email: thomaswbucci@outlook.com

PLAINTIFF'S EXHIBIT 1

CITY OF BRIDGEPORT
**DEPARTMENT OF POLICE**
300 CONGRESS STREET
BRIDGEPORT, CONNECTICUT 06604

ARMANDO J. PEREZ
Chief of Police

To: Chief Armando Perez

From: Captain Lonnie Blackwell

Re: Harassment

Date: July 20, 2020

Sir:

    Please accept this correspondence as an official complaint against Assistant Chief Rebecca Garcia. Since her promotion from Police Captain to Assistant Chief, she has demonstrated demeaning behavior and abrasive actions toward me. The Assistant Chief has often conducted herself in an unprofessional manner in multiple Compstat meetings directing inflammatory dialogue oftentimes interrupting me when I am attempting to speak. This disparate treatment is so obvious and evident that my direct supervisor, Deputy Chief Anthony Armeno, has spoken to me, in the presence of Captain Lougal, in the captain's office earlier this month, advising me that he would address the assistant chief's conduct and he viewed her actions to be reprehensible and unacceptable under the standards of conduct required as a member of the Bridgeport Police Department. Captain Fitzgerald also walked down to the captain's office to ask me what is going on with 'Becky' and why does she keep attacking you in the meetings. This was stated in front of Captain Lougal as well. Captain Lougal stated to me that her actions

clearly show that she has a negative history with me. During one meeting, Assistant Chief Garcia attempted to humiliate me by posturing to be legal counsel and objected to my opinion that arresting demonstrators at the Christopher Columbus Statue in the city of Bridgeport was counterproductive and unnecessary. To the best of my recollection, I believe I was the only person of color in this meeting, (Capt. Porter was not present) and I was very uncomfortable with her lack of patience and awareness for the rights of the youth demanding justice. She has no educational certification that is recognized by the state of Connecticut to justify berating me in that manner and undermining my input as a commanding officer. As an educated African American police commander, I was in shock by her displayed conduct and cross-examination for a period of time in front of my peers. Quite frankly, I was embarrassed and left to feel isolated because of her actions. This hostility has caused me to tolerate less than favorable working conditions and has an adverse effect on my career as a Bridgeport Police Captain. Historically, Assistant Chief Garcia has displayed prejudicial and discriminatory conduct toward African American police officers. This conduct is contrary to the inclusive national movement predicated on police reform focused on diversity and the elimination of explicit bias exhibited by police personnel. Further, I received text communication from Assistant Chief Garcia on July 16, 2020 which was accusatory in nature regarding my allegedly not attending an interview with the Office of Internal Affairs. Instead of calling me to gather the facts, which would have proven that I complied with all correspondence with the OIA sergeant, she immediately attempted to attack me. She forwarded several question marks (???) to my departmental cell phone after my text response. Subsequent to the text messages, the assistant chief immediately called me with a demonstrable hostile attitude. I attempted to explain to her that I recently lost a family member who had passed away. Moreover, I advised her that I believed that her actions constituted

continued harassment. With no regard for my loss, she 'ordered' me to contact OIA and proceeded to rudely hang up the phone on me. This demonstrates her continued efforts to discredit me and marginalize my accomplishments as an African American Police Captain in a city where racism against black officers has been documented for over forty years. I am requesting relief from her overt acts of discrimination and harassment.


Respectfully,

*[signature]*

Captain Lonnie Blackwell